**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
Jeffrey D. Prol, Esq. (JP 7454)
Jeffrey A. Kramer, Esq. (JK 8278)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to Debtors and
Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| MICROBILT CORPORATION, *et al.*[1] | Case No. 11-18143 (MBK) |
| Debtors. | Joint Administration Requested |

**DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(c), 345(b), 1107 AND 1108 (I) AUTHORIZING THE DEBTOR TO CONTINUE AND MAINTAIN ITS EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS FORMS, (II) MODIFYING THE INVESTMENT GUIDELINES SET FORTH IN 11 U.S.C. § 345, AND (III) GRANTING RELATED RELIEF**

MicroBilt Corporation, *et al.*, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtor**"), by and through their proposed undersigned counsel, hereby submit this motion (the "**Motion**") seeking entry of an order (the "**Order**"), substantially in the form submitted herewith, pursuant to 11 U.S.C. §§ 105(a), 363, 345(b), 1107, and 1108 and Federal Rule of Bankruptcy Procedure 6004(h), (A) authorizing the Debtor to (i) maintain its existing bank accounts and cash management system, and (ii) continue to use its existing business forms and records, (B) waiving compliance with investment guidelines pursuant to 11 U.S.C. § 345(b); and (C) granting related relief. In support of the Motion, the Debtor respectfully represents as follows:

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MicroBilt Corporation (7436) and CL Verify, LLC (7151).

19039/5
03/24/2011 17040474.2

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein are §§ 105, 363, 345(b), 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Jersey.

## BACKGROUND

**A.    General Background**

3. On March 18, 2011 (the "**Petition Date**"), Debtor MicroBilt Corporation ("**MicroBilt**") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, on March 23, 2011, Debtor CL Verify, LLC ("**CLV**") also filed a voluntary petition for relief under chapter 11 (collectively, the "**Chapter 11 Case**").

4. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. As of the filing of this Motion, no trustee, examiner or committee has been requested or appointed in this Chapter 11 Case.

6. Debtor MicroBilt is a corporation duly organized under and existing pursuant to the laws of the State of Delaware, with principal offices located at 100 Canal Pointe Boulevard, Suite 208, Princeton, New Jersey 08540. MicroBilt is in the business of providing consumer-specific information and service offerings related to consumer transaction accounts with financial institutions, records of returned checks reported by retail merchants, and consumer

identity data to lenders such as credit unions and car dealerships, among others, which the lenders use to make decisions about lending money to their customers.

7. Debtor CLV is a limited liability company duly organized under and existing pursuant to the laws of the State of Florida, with principal offices located at 3030 North Rocky Point Drive, Suite 670, Tampa, Florida 33607. CLV is wholly-owned by MicroBilt.

8. For information regarding the Debtor's business and the events leading to the filing of this Chapter 11 Case, the Debtor respectfully refers the Court and parties in interest to the Declaration of Walter Wojciechowski in Support of First Day Motions (the "**Wojciechowski Declaration**"), filed simultaneously herewith and incorporated by reference as though fully set forth herein.

**B.    The Debtor's Cash Management Structure**

9. In the ordinary course of its operations, the Debtor maintains a cash management system (the "**Cash Management System**") to receive and disburse funds. Currently, the Debtor has eleven (11) bank accounts. A list of the financial institutions (collectively, the "**Banks**") where these accounts and their respective account numbers is annexed hereto as **Exhibit A** (collectively, the "**Bank Accounts**"). In connection with the Cash Management System, the Debtor maintains the Bank Accounts and pays its expenses for its business operations out of same and maintains an account for customer deposits as well as other accounts with descriptions and balances as more fully set forth on **Exhibit A**.

10. The Debtor's cash management system includes the necessary accounting controls to enable the Debtor to trace funds through the system and ensure that transactions are adequately documented and readily ascertainable. The Debtor currently maintains and will continue to maintain detailed and accurate accounting records reflecting all transfers of funds. The Debtor's cash management procedures are ordinary, usual and essential business practices. They are similar to those used by other similarly situated corporate enterprises and provide

significant benefits to the Debtor, including the ability to (a) accurately and immediately report receipts and expenditures, (b) control corporate funds centrally, (c) ensure the availability of funds when necessary, and (d) reduce administrative expenses by centralizing the movement of funds.  In order to lessen the disruption caused by the bankruptcy filings and maximize the value of their estates in these chapter 11 proceedings, it is vital that the Debtor maintains its system of managing cash and its existing Bank Accounts.

### RELIEF REQUESTED

11.     By this Motion, the Debtor requests entry of an order (i) authorizing the Debtor to maintain its existing bank accounts and cash management system and continue to use existing business forms and records, (ii) modifying the investment guidelines set forth in section 345 of the Bankruptcy Code and (iii) granting related relief.  In connection with this relief, the Debtor respectfully requests a waiver of certain of the operating guidelines established by the United States Trustee for the District of New Jersey that require the Debtor to close all of its prepetition bank accounts, open new accounts designated as debtor-in-possession accounts and provide new business forms and statements.

### BASIS FOR RELIEF

12.     To supervise the administration of chapter 11 cases, the Office of the United States Trustee (the "**U.S. Trustee**") has established certain operating guidelines for debtors in possession.  These guidelines require chapter 11 debtors, among other things, to (1) close all existing bank accounts and open new debtor in possession bank accounts, (2) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes, (3) maintain a separate debtor in possession account for cash collateral, and (4) obtain checks bearing the designation "debtor in possession," the bankruptcy case number, and the type of account for all debtor in possession checking accounts.  These requirements are designed to provide a clear line of demarcation between a debtor's pre-petition

-4-

and post-petition transactions and operations and prevent the inadvertent post-petition payment of pre-petition claims.

**A.     Request to Maintain Bank Accounts and Cash Management Systems.**

13.     Permitting the Debtor to use its existing Bank Accounts and Cash Management System is in the best interests of the Debtor's estate, its creditors and other interested parties. At this early stage of this chapter 11 case, it is critical that the Debtor be able to consolidate management of cash and centrally coordinate transfers of funds to efficiently and effectively operate its business. Through the Cash Management System and Bank Accounts, the Debtor is able to effectively and efficiently collect, transfer, and disburse funds as needed, as well as to efficiently monitor and control the movement of cash. The Debtor will work closely with the Bank to ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court. The Debtor will also maintain records of all transfers within the Cash Management System so that all transfers and transactions will be documented in its books and records to the same extent such information was maintained by the Debtor prior to the Petition Date.

14.     To require the Debtor to use new accounts at the present time would be disruptive to its business and would impair their efforts to maximize the value of its estate for the benefit of its creditors and parties in interest. Requiring the Debtor to adopt new, segmented cash management system at this critical stage of this case would be expensive, would create unnecessary administrative burdens, and would be much more disruptive than productive. Moreover, having to open new accounts as of the Petition Date would unnecessarily distract the Debtor's key accounting and financial personnel whose efforts are more appropriately focused on assisting with the Debtor's efforts to reorganize its business. Furthermore, any delays or disruption in the payment of wages and other employee-related expenses resulting from changing bank accounts would erode employee morale at this critical time, an outcome that would severely hamper the Debtor's efforts to reorganize its business.

15. Conversely, maintenance of the Debtor's Bank Accounts And Cash Management System at the present time would avoid delays in the payment of necessary expenses and will ensure a smooth transition into chapter 11 without the inconvenience, cost, confusion and delay associated with transferring cash management operations to new accounts. By allowing the continued use of its existing Bank Accounts and Cash Management System, the Debtor will have the unimpeded cash flow necessary for the interim maintenance of its operations.

16. The Debtor also requests authority to preserve various reporting and accounting mechanisms, such as signatory authorizations and accounting systems central to the maintenance of the Bank Accounts. The interruption or termination of such reporting and accounting mechanisms would undermine the utility of the Bank Accounts. In accordance with existing practices, the Debtor will maintain strict records of all receipts and disbursements from the Bank Accounts during the pendency of this case and will ensure that its records properly distinguish between pre- and post-petition transactions.

17. The Debtor submits that the relief requested herein is appropriate and well within this Court's authority. Allowing the Debtor to maintain its pre-petition Bank Accounts and Cash Management System at the present time will minimize the effect of this chapter 11 case on its business affairs without violating the policies of the Bankruptcy Code. Doing so will enable the Debtor to transition into chapter 11 in a manner that maximizes value for the estate and creditors and is therefore in its best interests.

18. The Debtor's continued ordinary course use of its Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which allows a debtor in possession to "use property of the estate in the ordinary course of business." *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985). Courts in this District have long recognized that strict enforcement of bank account closing requirements does not serve the purposes of chapter 11 and have approved motions similar to this Motion. *See, e.g., In re Tarragon Corp.*, Case No. 09-

10555 (DHS) (Bankr. D.N.J. Jan. 15, 2009); *In re Marcal Paper Mills, Inc.*, Case No. 06-21886 (MS) (Bankr. D.N.J. Dec. 4, 2006); *In re GB Holdings, Inc.*, Case No. 05-42736 (JHW) (Bankr. D.N.J. Oct. 12, 2005); *In re THCR/LP Corporation*, Case No. 04-46898 (JHW) (Bankr. D.N.J. Nov. 20, 2004)

19. A similar waiver of account closing requirements is important in this case. Specifically, subject to a prohibition against honoring pre-petition checks without specific authorization from this Court, the Debtor requests that the Bank Accounts be deemed to be debtor in possession accounts, and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the pre-petition period, be authorized. In sum, while the Debtor may seek to modify its Bank Accounts and Cash Management System in the future, the Cash Management System currently allows the Debtor to effectively and efficiently run its business. The Debtor believes that to maximize the value of its business at this point in time, there must be minimal disruption to its administrative affairs, and that the maintenance of its current Cash Management System, as provided herein, is essential to limiting disruptions to the Debtor's operations.

20. The Debtor submits that if the relief requested in this Motion is granted, the Debtor will not pay, and the Bank will be directed not to pay, any debts incurred before the Petition Date, except as authorized by this Court.

**B.     Request for Authorization to Maintain Existing Business Forms.**

21. In order to minimize expenses to the Debtor's estate, the Debtor also requests authorization to continue to use all correspondence, business forms (including, but not limited to, letterhead, purchase orders and invoices) and bank check stock existing immediately prior to the Petition Date (collectively, the "**Business Forms**"), without adding a reference to the Debtor's status as a debtor in possession. *See In re Gold Standard Baking, Inc.*, 179 B.R. 98, 105-106 (Bankr. N.D. Ill. 1995) (holding United States Trustee's requirement of prohibiting issuance of checks without "debtor-in-possession" designation to be unenforceable); *In re*

-7-

*Johnson*, 106 B.R. 623, 624 (Bankr. D. Neb. 1989) (debtors not always required to obtain new checks imprinted with "Debtor in Possession" legend). Indeed, courts have held that while the United States Trustee's office is granted supervisory powers, Title 28 of the United States Code does not provide the U.S. Trustee with any power to "impose substantive or administrative requirements on debtors." *In re Young*, 205 B.R. 894, 897 (Bankr. W.D. Tenn. 1997).

22. The Debtor submits that the authorization to use the Business Forms will facilitate a smooth and orderly transition into chapter 11 and minimize disruption to the Debtor's business affairs without offending the policies underlying the Bankruptcy Code. Changing correspondence and business forms would be expensive, unnecessary and burdensome to the Debtor's estate and disruptive to the Debtor's business operations and would not confer any benefit upon the Debtor, its estate, its creditors or those dealing with the Debtor. The Debtor proposes that in the event that it needs to purchase new Business Forms during the pendency of this chapter 11 case, such forms will include a legend referring to the Debtor's status as a debtor in possession.

23. For these reasons, the Debtor requests that it be authorized to use existing checks and Business Forms without being required to place the label "debtor in possession" on each.

**C.    Request for Waiver of Section 345 Deposit Guidelines.**

24. Finally, the Debtor submits that sufficient cause exists to permit a waiver of the depository requirements articulated in section 345 of Bankruptcy Code, subject to a 60-day objection period for the United States Trustee.

25. Section 345(a) of the Bankruptcy Code authorizes deposits of money, such as the Debtors' cash, in a manner that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits that are not "insured or guaranteed by the United States or by a department, agency, or

instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the trustee must require a bond from the entity with which the money is deposited or invested in favor of the United States secured by the undertaking of an adequate corporate surety. Alternatively, the estate may require the entity to deposit securities of the kind specified in section 9303 of title 31 of the United States Code.

26. The purpose of this statute is to ensure that estate funds are invested prudently by the trustee or debtor-in-possession. It requires the obtaining of a bond or other security for all deposits with FDIC-insured banks to the extent that the funds maintained with any given bank exceed the FDIC-insured limit of $250,000.

27. Unlike the predecessor to section 345(b) (which was quite inflexible as to the manner in which estate funds should be invested), the Bankruptcy Reform Act of 1994 amended section 345(b) by adding the phrase "unless the court for cause orders otherwise." The Congressional intent was to afford Bankruptcy Courts wider discretion to permit the deposit of estate monies that are not fully FDIC-insured, collateralized or bonded particularly in larger cases involving more sophisticated entities. *See* 140 CONG. REC. 10, 767 (Daily ed. October 1, 1994).

28. Waiver is appropriate in this case as the Bank Accounts are maintained with a financially sound banking institutions. The funds are not encumbered by any creditors' liens and/or security interests with the exception of liens on certain equipment. Consequently, a waiver of the section 345 deposit guidelines would not pose a risk to the Debtor's estate nor its creditors. Furthermore, requiring the Debtor to issue bonds in favor of the United States, as the statute requires, would cause substantial unnecessary expense to the Debtor's estate.

29. Accordingly, the Debtor submits that granting a waiver of the requirements of section 345 of the Bankruptcy Code, subject to a 60-day objection period for the

United States Trustee, will facilitate a smooth and orderly transition of its business into chapter 11 and minimize the disruption of this transition.

**D.      Immediate Application**

30.     To the extent Bankruptcy Rule 6004(h) is applicable to this Motion, the Debtor also seeks a waiver of the ten-day stay under Bankruptcy Rule 6004(h).

### NOTICE

31.     No trustee, examiner or, creditors' committee has been appointed in this Chapter 11 Case.  Notice of this Application has been given to (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of New Jersey; (iv) the Internal Revenue Service; (v) the Debtor's twenty largest unsecured creditors; (v) the Banks listed on Exhibit A hereto; and (vi) those parties who have filed a notice of appearance and request for service of pleadings in the chapter 11 case pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

### WAIVER OF MEMORANDUM OF LAW

32.     Because the legal points and authorities upon which this Motion relies are incorporated herein and do not raise any novel issues of law, the Debtor respectfully requests that the requirement of the service and filing of a separate memorandum of law pursuant to Local Rule 9013-2 be deemed waived.

### NO PRIOR REQUEST

33.     No previous motion for the relief sought herein has been made to this or to any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form submitted herewith, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated: March 24, 2011                    **LOWENSTEIN SANDLER PC**

                                         By:    */s/ Kenneth A. Rosen*
                                                Kenneth A. Rosen, Esq. (KR 4963)
                                                Jeffrey D. Prol, Esq. (JP 7454)
                                                Jeffrey A. Kramer, Esq. (JK 8278)
                                                65 Livingston Avenue
                                                Roseland, New Jersey 07068
                                                Tel: (973) 597-2500
                                                Fax: (973) 597-2400

                                                *Proposed Counsel to the Debtors and*
                                                *Debtors-in-Possession*