UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                                              609-858-9360
United States Bankruptcy Judge                                                                609-989-2259 Fax

October 31, 2013

**Bruce S. Luckman, Esq.**
Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.
308 Harper Drive
Suite 200
Moorestown, NJ 08057
Special Litigation Counsel to Debtor, Microbilt Corporation

**Timothy P. Neumann, Esq.**
Broege, Neumann, Fischer, & Shaver, LLC
Old Squan Plaza
25 Abe Voorhees Drive
Manasquan, NJ 08736
Attorney for Maselli & Warren, P.C.

Re:  In re Microbilt Corporation, et. al.
Case No. 11-18143 (MBK)

Counselors:

This matter is before the Court upon the Motion of Maselli & Warren, P.C. ("MWPC") seeking an Order Directing the Reorganized Debtor, Microbilt Corporation ("Microbilt"), to pay MWPC's allowed claim for pre-petition attorney's fees ("Motion").  The Court has reviewed the pleadings submitted and issues the following ruling:

**I.      Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013,  referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(B).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408. Pursuant to Fed. R. Bank. R. 7052, the Court issues the following findings of fact and conclusions of law.[1]

## II. Background

### A. Pre-Petition

Microbilt is in the business of providing consumer identity data, information, and services to end users. Chex is a supplier of consumer credit information and supplies information to Microbilt for re-sale to end users. Chex and Microbilt initially entered into a Resale Agreement in 2003. In 2009, that agreement was terminated and Microbilt commenced a lawsuit that was ultimately settled when the parties entered into a subsequent Resale Agreement, dated August 26, 2009, and amended in January of 2010 ("Resale Agreement").

CL Verify, LLC and CL Verify Credit Solutions, LLC ("CLV Companies") are resellers who also purchased information from Chex. On or around August 31, 2010, Microbilt acquired the assets and liabilities of the CLV Companies. Microbilt alleged that it had provided Chex with notice of this merger; in contrast, Chex claimed that the merger between Microbilt and the CLV Companies violated the Resale Agreement between Microbilt and Chex.

MWPC had represented Microbilt in various litigation matters between 2001 and 2011. In anticipation of Chex's termination of the Resale Agreement, Microbilt hired MWPC to obtain an injunction to prevent such action. In this regard, MWPC filed an order to show cause in State Court, which thereafter was removed by Chex to Federal Court.

### B. Microbilt's Bankruptcy

As a subsequent stratagem to avoid termination of the Resale Agreement, Microbilt filed for Chapter 11 Bankruptcy on March 18, 2011. Prior to the bankruptcy filing, Chex had sued the

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

CLV Companies in Florida Federal Court over unpaid bills and MWPC was retained by Microbilt and admitted *pro hac vice* to file an answer and a counterclaim. After the Chapter 11 filing, Chex filed a Motion to Compel Microbilt to Assume or Reject its Resale Agreement. Microbilt sought authorization to retain MWPC as special counsel to handle the contract assumption/rejection litigation and, shortly thereafter, MWPC was appointed as special counsel pursuant to 11 U.S.C. § 327(e). Soon after approval of the firm's retention, however, a conflict arose which resulted in MWPC's withdrawal as counsel.

At the time of the bankruptcy filing, MWPC held a pre-petition claim for unpaid legal fees in the amount of $54,516.29, for which MWPC filed a proof of claim ("POC"). On June 22, 2012, Microbilt amended its statement of financial affairs to dispute the amount of MWPC's POC in its entirety. Furthermore, Microbilt's Fourth Amended Reorganization Plan ("Plan") was confirmed on November 30, 2012 and provides that the allowed claims of all creditors are to be paid in full; however, Microbilt omitted the MWPC POC in the escrowed payments under the Plan. Moreover, the Plan stipulates that Microbilt does not release any claims it may have against MWPC, and preserves Microbilt's right to pursue a cause of action against MWPC, as well as all defenses to the MWPC claim.

It is undisputed that the Debtor failed to file a timely objection to MWPC's claim and, thus, the claim is deemed allowed pursuant to 11 USC § 502(a).[2] Microbilt filed a certification on January 25, 2013 stating that it has made all payments to pre-petition secured and unsecured creditors; however, MWPC asserts that it has not received its payment on its allowed claim and

---

[2] Pursuant to D.N.J. LBR. 3007-1(a), the Reorganized Debtor was required to file an objection to the allowance of claims within sixty (60) days of the entry of a confirmation order. Thus, the deadline for Microbilt to file an objection to the MWPC POC was January 28, 2013. The Court is cognizant of MWPC's contention that Microbilt's untimely objection precludes any opposition to the within Motion. However, the Court will address this matter on the merits, rather than ruling on procedural niceties, and relies upon the decision in Alcon Demolition, 204 B.R. 440, 445 (Bankr. D.N.J. 1997), which noted that "Local Rule 1[(a)] provides that the application of any of the local rules can be modified or relaxed by the court in the interests of justice."

has filed the within Motion. For reasons the Court will explain, the Court GRANTS MWPC's Motion in its entirety.

### III. Discussion

This dispute presents the challenging issue of whether the claims allowance scheme incorporated within the Bankruptcy Code pre-empts a New Jersey Court rule of procedure requiring attorneys to provide a client with notice and alerting the client of a right to pursue arbitration, before initiating an action to recover fees. N.J. Ct. R. 1:20A-6 states as follows:

> No lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving pre-action notice to a client; however, this shall not prevent a lawyer from instituting any ancillary legal action. pre-action notice shall be given in writing, which shall be sent by certified mail and regular mail to the last known address of the client, or, alternatively, hand delivered to the client, and which shall contain the name, address and telephone number of the current secretary of the Fee Committee in a district where the lawyer maintains an office. If unknown, the appropriate Fee Committee secretary listed in the most current New Jersey Lawyers Diary and Manual shall be sufficient. The notice shall specifically advise the client of the right to request fee arbitration and that the client should immediately call the secretary to request appropriate forms; the notice shall also state that if the client does not promptly communicate with the Fee Committee secretary and file the approved form of request for fee arbitration within 30 days after receiving pre-action notice by the lawyer, the client shall lose the right to initiate fee arbitration. The attorney's complaint shall allege the giving of the notice required by this rule or it shall be dismissed.

N.J. Ct. R. 1:20A-6.

Microbilt argues that MWPC failed to give the pre-action notice required under N.J. Ct. R. 1:20A-6, and thus asserts that MWPC's POC is defective under non-bankruptcy law. MWPC contends that there was no reason to serve upon Microbilt a notice of fee arbitration as there was no dispute to the fees until after the firm's withdrawal as special counsel. Moreover, even upon learning of Microbilt's decision to contest the pre-petition fees, MWPC was unable to serve a

pre-action notice without violating the automatic stay. Thus, the issue before the Court is whether the failure to comply with a state court rule of practice should serve as a bar to the allowance of a claim, notwithstanding the creditor's full compliance with the claims allowance process provided under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

In resolving the present dispute, this Court is guided by the recent precedential Third Circuit decision in Simon v. FIA Card Servs., N.A., 2013 U.S. App. LEXIS 20403 (3d Cir. N.J. Oct. 7, 2013). In Simon, the debtor sought to pursue claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), including the failure to provide the "mini-Miranda" warning required under 15 U.S.C.S. § 1692e. The District Court dismissed the action, ruling that the FDCPA claims were precluded by the Bankruptcy Code and the relief available thereunder. On appeal, the Third Circuit determined that there should not be a blanket preclusion of all FDCPA claims, but only where there was a direct conflict between the FDCPA and the Bankruptcy Code. Pertinently, the Third Circuit held:

> When, as here, FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims. When, as is also the case here, the FDCPA claim arises from communications sent in a pending bankruptcy proceeding and there is no allegation that the communications violate the Code or Rules, there is even less reason for categorical preclusion. The proper inquiry for both circumstances is whether the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced.

Id. at *38.

The Third Circuit emphasized the "Hobson's Choice" facing the attorneys in Simon: had they given the debtor the "mini-Miranda" warning, they would have violated the automatic stay provided by the Bankruptcy Code; yet, the failure to provide the requisite warning would have

5

contravened the FDCPA. Thus, there was an actual conflict between the two statutory schemes. Similarly, in the instant case, had MWPC issued a pre-action notice, it would have violated the automatic stay. This Court, following the rationale employed by the Third Circuit in Simon, determines that the Bankruptcy Code and Federal Rules of Bankruptcy Procedure pre-empt the application of N.J. Ct. R. 1:20A-6.[3]

Counsel for Microbilt refers the Court to decisions within this District which mandate adherence to N.J. Ct. R. 1:20A-6, in order to perfect a pre-petition attorney's lien. These decisions are inapposite to the case at bar. For instance, the Bankruptcy Court, in Rapid Freight Systems, Inc., 2011 Bankr. LEXIS 1328 (Bankr. D.N.J. Mar. 31, 2011), was asked to determine whether an attorney held a valid attorney's lien securing pre-petition fees. The issue was whether the liens were unperfected due to the failure to serve upon the debtor/client a pre-petition a pre-action notice. The court held that a pre-action notice is required in order to perfect the attorney's lien.

The court's decision in Rapid Freight reflects a correct application of Butner v. United States, 536 U.S. 932 (U.S. 2002), in which the U.S. Supreme Court confirmed that applicable bankruptcy law determines property rights. An attorney's lien represents a property interest and non-bankruptcy law dictates whether or not an attorney has a perfected properly a lien against property of the bankruptcy estate. However, in the case at bar, MWPC does not assert the existence of an attorney's lien. Rather, the claimant seeks only treatment as a general unsecured creditor. In point of fact, Judge Gloria M. Burns, in Rapid Freight, acknowledged the validity of such an unsecured claim when she noted the following:

---

[3] Indeed, the pre-action notice mandate found in N.J. Ct. R. 1:20A-6 cannot be reconciled with 11 U.S.C. §502(a), which authorizes creditors and other parties in interest to object to the allowance of claims. Certainly, the failure to serve a pre-action notice on the Debtor should not enable another party in interest to object to the claim. Accordingly there is a "physical impossibility" in compliance between the Bankruptcy Code and N.J. Ct. R. 1:20A-6.

> The result may seem harsh to Fleischer, however, they are not left wholly without remedy or redress. They will still have a general unsecured claim for alleged amounts owed based upon pre-petition services provided to Debtor in connection with the state court collection matters.

In re Rapid Freight Systems, 2011 Bankr. LEXIS at *23-24.

Finally, in researching the issues in dispute, this Court has considered Judge Dickinson R. Debevoise's decision in Kelley Drye & Warren v. Murray Industries, Inc., 623 F. Supp. 522 (D.N.J. 1985), which raises similar issues in the context of a fee dispute litigated in Federal Court. Although Judge Debovoise dismissed the case, requiring full compliance with N.J. Ct. R. 1:20A-6 [formerly N.J. Ct. R. 1:20A-1], the Kelley Drye &Warren decision is not persuasive authority with respect to the dispute before this Court. Indeed, that case did not involve the Bankruptcy Code and its detailed, competing statutory scheme for claims allowance and protections under the automatic stay.

**IV. Conclusion**

For the reasons set forth above, the Court rules MWPC's failure to serve the Pre-Action Notice does not preclude the allowance of MWPC's POC under 11 U.S.C. § 502(b). Accordingly, MWPC's Motion is **GRANTED** in its entirety. MWPC is directed to submit a form of order consistent with the Court's ruling.

_/s/ Michael B. Kaplan_
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: October 31, 2013